Our final case for this morning is United States v. Herman. Ms. Christensen. May it please the court, counsel, good morning, your honors, barely, good morning, your honors. My name is Joanna Christensen and I represent the appellant, Joshua Herman, in this case. The issue before this court this morning is whether the two-level enhancement for physical restraint under the robbery guideline should apply where the defendant merely pointed a gun and ordered the victims not to move. I gather there was no protest in the district court? After there was no protest in the district court directly. Okay, so we have an issue with a conflict among the circuits. How can it be plain error when there's a conflict among the circuits? Your honor, I don't agree that there's a conflict among, well, I agree that there's a conflict among the circuits. However, this court has definitively ruled on the issue, therefore making the conflict not an issue for this court or for the district court. The district court is not free to disagree with this court on matters of law. And the court, this court held, perhaps in dicta in Dubay, that that was not enough. It's a contradiction in terms, holding in dicta. It's not the same thing. Stated in dicta. You can't hold something in dicta. Yes, stated in dicta that this was not enough for the enhancement. However, that dicta has been repeated as holdings in other cases by this court. Therefore, even if there is a circuit split on this issue, it doesn't matter where this court has definitively ruled. In Carter, this court said that the sustained focus of a firearm and compelled movement justified the enhancement. We don't have that in this case. The probation officer's finding, which the district court adopted, is flat out wrong. Therefore, it can be plain error. I don't know why, though, it's necessary for physical restraint to involve movement. I mean, he doesn't just point a gun at these two people. He's pointing two guns at them and making verbal threats at the same time. And so, you know, it seems to me that's a way of drawing a little fence around them, saying, stay where you are and I'm going to blow your head or whatever, you know, serious verbal threats. So I don't see this as just, you know, simply pointing a gun as he backs off and nothing else. It seems to me it's a very intimidating situation, just like many of the others. Well, I agree somewhat, except for I think the facts that you're relying on are not solid in the record. I think that there's some dispute as to what he said. But the district court seems to have been satisfied that enough was done. I think that the district court was satisfied that there was enough done to complete the robbery. And he pointed one gun in the house. The other one was, as far as the evidence shows, still in its holster in his hand. And then pointed, I believe, the same gun, the revolver, not the one he stole, outside the house. That he got different enhancements for. So if the probation officer's findings become the district court's findings because the court adopted them, all the probation officer found was that he pointed the gun and ordered them not to move. There's some question what he said. One witness said that he was going to blow them back. Another one said she couldn't hear what he said and he was mumbling and still thought he was joking. So I don't think that it's as solid as the other cases that do apply this enhancement. But the guideline definition is just the forcible restraint of the victim. And then there's some examples, such as by being tied, bound, or locked up. But on a plain error review, especially pointing a gun directly at a person and ordering them either to move someplace, you know, go into this room, or ordering them to stay put, doesn't seem like too much of a stretch. I mean, maybe someday somebody will raise the issue with the district court. Well, that would be nice, Your Honor. But I think when you're talking about putting the kind of physical fence around someone, this court has noted that essential in all armed robberies is the idea that the robber wants people to comply and stay put. Well, not necessarily stay put. If it's an armed robbery and, you know, you throw your purse at the person, maybe he turns and runs away and you go about your business without your purse. I'm not sure I would go about my business without my purse at that point. But I think that compliance is part of every armed robbery. You know, the robber wants the victim to comply with what he's told. Well, for a moment. But I'm saying the compliance might be the hand over your wallet, hand over your purse, hand over your rings or your phone or whatever the armed robbery is about. And I don't know that it's necessarily always the case that the robber is saying, and I'm going to point my gun at you and make sure you don't move. And I think that that's what other courts have said, that that's the implied armed robber part of it. The gun implies that you're not going to move, that you're going to comply and allow the robber to get away. That's certainly what it said, what has been said. Okay. I also, in addressing the plain error, this court has talked about how plain and harmless error are kind of two parts of the same tree. And it may not make much of a difference between harmless error and plain error. And I will not. Not much of a difference? The Supreme Court about every two years reverses courts of appeals that say that. They say there's a big difference. Now, we're not in the business of contradicting them. No. But does it matter whether it's plain error? If we agree with you about the concurrent sentence issue, this case goes back for resentencing. And then I assume this argument can be made from scratch. Certainly, if the remand is not limited, as the government has asked for. The government has asked for it. The court is going to remand a limited remand. I suppose that would be in this court's toolbox to make it a limited remand about the concurrent versus consecutive sentences. If it's not, then, of course, it can go back and then be raised and perhaps provide a better record for the issue to be considered. I will talk just briefly about the Setzer issue. It's a difficult issue because it's got the unknown in it, the unknown about whether this state case is going to go forward. But what is not unknown is that it will affect Mr. Herman in prison. And the BOP has not acknowledged what the district court said in the judgment in this case as being a concurrent sentence. Right now, the BOP is treating it as if it's consecutive, which means for Mr. Herman that he's got an additional point, several points on his designation calculation that make it impossible for him to get certain programming and to go to a lower designated prison. So it does make a difference for the district court, and the district court can't simply just say, well, I don't really have an idea one way or another. So we do ask that it's certainly remanded for that. I think the district judge said he did have an idea, that he concluded that a concurrent sentence would not be lawful. It wasn't within his power. I don't believe that's what the court said. I have no objection to it running concurrent. But I thought he said he couldn't do it. Well, he said, the judge said, I have no objection if the state case runs concurrent with the federal case. I can't control what the state does. Right. And the mistake is embedded there. In that belief that he can't control the outcome. He can. Because he can control the federal sentence, and there was no question that the state sentence was going to be longer than the federal sentence. So by adjusting the federal sentence, he could make it concurrent. I mean, the guidelines were changed to make this possible. Correct. And he just perhaps overlooked that fact. I believe so. I think that it's the failure to recognize that he can control part of this, and it's not just the state sentence. It's the way the federal government executes the federal sentence because of the state sentence. That's right. So unless the court has further questions, I'll reserve the remainder of my rebuttal. Sure. Okay. Mr. Holler. Good morning, Your Honors, and may it please the court. The court should affirm Mr. Herman's sentence. Starting with the first issue, there was no error in calculating Mr. Herman's guideline range, let alone plain error. This court has stated repeatedly that if a defendant takes a step beyond the mere aiming of a gun at a stationary robbery victim, the physical restraint enhancement can be found. And at a minimum, my opponent has essentially conceded this is a plain error case. As other courts have recognized, courts are all over the map on this issue. Some take a stronger standard than this court has. Counsel, let me tell you what my problem with your argument is. Your argument and that of the circuits that have held that pointing a gun is physical restraint have said essentially pointing a gun can be as effective as a rope or as morally bad as a rope. Maybe it's worse. And so the form of the argument is that A is as bad as B implies that A is B. But being as bad as something else doesn't make it physical restraint. There are a lot of things as bad as physical restraint. But the guideline talks about physical restraint and talks about tied, bound, or locked up. Why shouldn't we take that language seriously rather than as being a form of silly putty, which is essentially what you're asking us to make it? Well, I disagree with that characterization, Your Honor. But I would have two responses. The first response would be I'm not asking the court to do it. The court's already done it because the court has already said. Oh, each of you says the court has already ruled in my favor. No, no, Your Honor. Look, trying to shout down a judge doesn't really help your argument. Yes, Your Honor. Unless you're another judge. When both sides say that, it's often a reason for the court to believe it hasn't actually been decided at all. My first point, Your Honor, is that the court has not decided A, whether merely pointing a gun at somebody counts or whether firing a gun in the direction of somebody counts. The court has, however, decided that pointing a gun at somebody and having them move from a bank vault to a teller station or from a bank position to a bathroom counts. And that, I believe, the logic of your argument… Counts as what? Counts as kidnapping? Counts as physical restraint. The courts have already said that. This court said that in Taylor. In what sense is it physical restraint? It's physical restraint because it goes beyond merely aiming a gun and because it compels movement. Going beyond merely aiming a gun is not physical restraint. When Indiana Jones is tied up in a chair, he's in physical restraint. When somebody aims a gun at him, he's probably just about to kill you. Words mean things, and you're trying to say… Physical restraint just doesn't have any meaning. We can pour into it anything we want. If you believe that words mean things, what you should be arguing is, well, it may not be physical restraint, but it's a form of bad behavior that district judges are perfectly free to take into account when imposing sentence. See Booker. Oh, it certainly is that. You don't have to squeeze everything into guidelines where it doesn't fit. Well, and maybe this case would have happened differently if the defendants had objected on that ground in the district court. But they did not. The Second Circuit in England, which even says merely pointing a gun isn't enough, states that its definition of physical restraint is holding back from proceeding or advancing. And this court has adopted that and said if you spray mace in somebody's face, that prevents them from proceeding or advancing because there's a forcible effect of a chemical spray that prevents you from going forward. And similarly here, as the district court found, Mr. Herman fired a shot. He fired a shot at somebody that creates a forcible bullet that I or Ms. Daniels or Mr. Kirk can't advance in front of. And so that action is true, Your Honor, it is as bad as tying somebody up, but it also physically restrains them. Now, does it do it in the same identical way as tying them? No. It never restrained Indiana Jones or James Bond. I don't think ropes restrained Indiana Jones either, Your Honor. He'd still get a two-level enhancement. Our position is that a minimum under plain error review, the lack of objection here, the fact that the courts are all over the map, and the fact that discharging a firearm does cause a forcible effect, is enough to say that it is not plainly wrong to treat Mr. Herman's actions here as physical restraint. On the secondary issue, yes, we are on harmless error review, Your Honor, and I'm not sure that anybody understood exactly. I'm not even sure that the defense attorney, frankly, understood what he was asking here, to be honest. But I don't think that the government and the judge understood. What the defendant asked for was sets or discretion, and the district court said, I have no objection if the state case runs concurrent with the federal case. I can't control what the state will do. Now, the district court is correct that it cannot control what the state will do. And if this sentence, if nothing is done with this sentence, and it is still a contingent and anticipated sentence throughout the entire time that Mr. Herman is incarcerated, then there's no way to know what will happen. And the secondary point, Your Honor, is when do courts exercise sets or discretion? Courts exercise sets or discretion, and the guidelines, as Chief Judge Wood pointed out, have been amended to reflect this. What are you supposed to consider? Are these related in some way? Did the district court consider as relevant conduct this behavior? In Hoffman, it was a state court child molestation case, and it was a federal child production case. In Setzer itself, there was an identical case, drug cases in both instances. This is the exact opposite. These are totally unrelated cases. The defendant committed a state court misdemeanor theft charge. I'm puzzled. Do you think that affects the district judge's discretion? I do not. But if the cases are unrelated, Setzer would have come out the other way. I think that if my point, Your Honor, is the court is supposed to consider the 3553A factors, and the court has to give some explanation. I wish you'd answer the question I asked. Yes, I believe it. You wish I had asked. I believe this would have come out the other way. I do. And the reason I do— So you think Setzer turns on whether the state and federal cases are related. And what language in Setzer do you rely on for that conclusion? I rely on the language from Setzer where the court says, we want to give comedy to the state, and we want to give the state the ability to act and to have great discretion. It doesn't have anything to do with whether the state and federal cases are related. But here, Your Honor— Look, the Supreme Court, if it wants to limit its decisions, can do so. But there's no language in Setzer which imposes a relatedness restriction on the federal court's ability to give a concurrent sentence. Setzer may be right or wrong, right? It disagreed with what the Solicitor General argued. I think it disagreed with what the law in the Seventh Circuit was. But it is what it is. And we have conceded there was error, Your Honor. Absolutely. We agree that there was error. Under Setzer, there was error here. Then the question is, if this were to go back— So the burden is on us. I agree. The court may disagree with us. But the burden is on us to show that there is no reason to believe that the court, which is then required to apply the 3553A factors and consider whether there should be a concurrent or consecutive sentence. And the court in Setzer said that one of the main reasons why it was acting the way it did is because it wanted the state court to have discretion to do what it wanted without having BOP, a federal agency, muck things up. That's what it wanted. Here, if the federal judge comes in and says, I demand, I demand that BOP treat this as a concurrent sentence. I demand that they do that. Then what is the state court going to do? If the state court thinks this is the most egregious misdemeanor theft case that has ever occurred and gives the maximum one-year sentence, BOP is going to say we are going to take one year off the sentence as a result of that because you committed that crime. We are going to reduce your federal sentence from ten years to nine years. If Mr. Herman can come back up here and give an explanation as to why any reasonable district court judge would do that, then Mr. Herman has clearly met his burden. We have not established this. It should go back. But I have yet to hear any rational reason why they would want to do that. If you impose a concurrent sentence here because we have a ten-year federal sentence and a maximum one-year state sentence, then any state sentence would become completely null and void. Now the district court might want to say what the district court, in fact, though perhaps for the wrong reasons, said here, which is I'm just going to forbear. I'm just going to let the state court, BOP, whatever, figure this out on its own. Or it might well say no. I think that if, in fact, the state court thinks this is bad, it's completely unrelated under the 5G guidelines. This should be consecutive. The district court might well say that, which is of no benefit to Mr. Herman. It makes things worse for him. But I do not think that the court would say, I affirmatively 100% declare this must be a concurrent sentence. And for those reasons, that is why the government has prevailed under harmless error. Not because there wasn't error. Yes, under Setzer, this was. The district court either didn't understand what was going on, misunderstood the question, or thought it was still operating under prior Seventh Circuit law. Certainly. But that error is still harmless. And harmless error matters. Plain error matters. Standards review matters. This court and the Supreme Court say that all the time. And so we believe, at least under harmless error, Mr. Herman's second issue fails. And under plain error, Mr. Herman's first issue fails. And this court should affirm. If the court has no further questions, I will rest. All right. Apparently not. Thank you. Ms. Christensen. I think the government's primarily relying on cases that have that compelled movement. And that's the main difference between physical restraint and not physical restraint. Whether we look across the board at all circuits or at this court, that's the primary difference in the first issue. If the government's arguing that firing a shot is the physical restraint, that's simply not where the guidelines fell in this case. The physical restraint was imposed for what happened in the house. The shot was fired outside the house while the victims were up and running, armed toward Mr. Herman and the people who were picking him up. Physical restraint doesn't work there either. Regarding the second issue, there is harm to Mr. Herman. It may not be that the judge, the BOP, would say it's completely concurrent and he only gets nine years really instead of the ten years because of the state case. The judge didn't seem to have a problem with it being concurrent, although wouldn't make a decision. It does harm Mr. Herman in other ways. His classification in the BOP is different. If this case remains pending throughout the entirety of his federal sentence, which the government seems to think it will because he says, Lake County is not going to go down to Kentucky to get Mr. Herman for this theft charge. I agree with that. They probably have other ways to spend their resources. But that will affect Mr. Herman's placement for the entire federal sentence that he's serving. So it's not just about time. It's also about the effect that it has on the defendants when there is a pending or a non-concurrent state sentence. So I see that my time is up. We ask that you reverse the remand for resentencing. Thank you. All right. Thank you very much. Thanks as well to the government. We'll take the case under advisement. Court will be in recess.